## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JENNIFER STARKS,

     *Plaintiff,*

*v.*                                                    CASE NO. 13-cv-13924

COMMISSIONER OF                    DISTRICT JUDGE GEORGE CARAM STEEH
SOCIAL SECURITY,                      MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant.*

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

II.   <u>REPORT</u>

A.      **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits (DIB) and supplemental security income (SSI). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 10, 11.)

Plaintiff filed an application for a period of disability, DIB and SSI with a protective filing date of June 23, 2009, alleging that she became unable to work on June 2, 2008. (Transcript, Doc. 7, at 100.)  The claim was denied at the initial administrative stage. (*Id.*)

On February 17, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Martha M. Gasparovich, who considered the application for benefits *de novo*. (Tr. at 67-89.) In a decision dated March 25, 2011, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from June 2, 2008, through the date of the ALJ's decision. (Tr. at 100-112.) Plaintiff requested Appeals Council review of this decision. (Tr. at 193.)

The Appeals Council vacated the decision and remanded the case to the ALJ on November 17, 2011.  (Tr. at 118-119.)  The Appeals Council instructed the ALJ, on remand, to:

---

[2]The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

- Assess evidence received in connection with request for review [claimant's reports of severe side effects from current medications];

- Obtain additional evidence concerning claimant's human immunodeficiency virus (HIV) in order to complete administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 C.F.R. §§404.1512-1513, 416.912-913). The additional evidence may include, if warranted and available, a consultive internal medicine examination and medical source statements about what the claimant can do despite the impairment.

- Further evaluate the claimant's subjective complaints and provide rationale in accordance with disability regulations pertaining to the evaluation of symptoms (20 C.F.R. §§404.1529 and 416.929) and Social Security Ruling 96-7p.

- Give further consideration to claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the nontreating source opinion pursuant to the provisions of 20 C.F.R. §§404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the nontreating source to provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairment. (20 C.F.R. §§404.1512 and 416.912).

- If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 C.F.R. §§404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(*Id.*)

Plaintiff again appeared and testified before the ALJ at a hearing held on March 29,

3

2012.  (Tr. at 40-66.)   In a decision dated May 22, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from February 1, 2009[3], through the date of the ALJ's decision. (Tr. at 124-140.)  Plaintiff again requested Appeals Council review of this decision. (Tr. at 218.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 15, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 26-28.)  On September 13, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co.*

---

[3]At the March 29, 2012 hearing before the ALJ, Plaintiff amended her alleged onset date from June 2, 2008 to February 1, 2009.

*v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece

of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### C.    Governing Law

Disability for purposes of DIB is defined as the:

[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (DIB), 416.905(a) (SSI). Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner

6

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), (g).

## D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through September 30, 2009, and had not engaged in substantial gainful activity since February 1, 2009. (Tr. at 127.) At step two, the ALJ found that Plaintiff's major depression, bipolar disorder, obesity

7

and human immunodeficiency virus (HIV) were serious impairments.[4] (*Id*.)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 128-130.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to

> stand and/or walk for up to a total of six hours in an eight-hour workday;...sit for up to a total of six hours in an eight-hour workday;...stand and/or walk for up to two hours at a time without interruption;...sit for up to two hours at a time without interruption and...lift up to twenty pounds occasionally and ten pounds frequently...only frequent reaching, handling, fingering, feeling, pushing and pulling with upper extremities...frequently operate foot controls;...occasionally climb stairs or ramps, balance, bend, stoop, kneel, crouch or crawl;...never climb ladders or scaffolds or work at unprotected heights;...only occasional exposure to moving mechanical parts, humidity and wetness, dusts, odors, fumes, pulmonary irritants, temperature extremes and vibrations;...only occasionally operate motor vehicles;...simple, routine work with one to three-step tasks;..."low stress" work, defined as requiring no quick decision making or quick judgment;...work requiring no interaction with the public and...work performed in a non-production-pace setting.

(Tr. at 131.)

At step four, the ALJ found that Plaintiff could not perform any of her past relevant work as a press operator or injection molding machine tender. (Tr. at 138-139.)  The ALJ also found that as of the alleged disability onset date, Plaintiff was forty two years old, which put her in the "younger individual, age 18-49" category. *See* 20 C.F.R. §§ 404.1563 and 416.963. At step five, the ALJ found that Plaintiff could perform a limited range of light,

---

[4]The ALJ also found that Plaintiff's anemia and chest pains constituted non-severe impairments because the evidence did not establish that they cause more than minimal limitations of Plaintiff's physical and mental ability to do basic work activities.  As non-severe impairments, these conditions were considered in combination with her severe impairments in assessing her claim.  (Tr. at 128.) Plaintiff's alleged carpel tunnel syndrome, bulimia and obsessive compulsive disorder (OCD) were considered as non-medically determinable impairments.  (*Id*.)

unskilled work and that she could perform several jobs that existed in significant numbers in the national economy. (Tr. at 139.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 140.)

### E.    Administrative Record

Plaintiff was diagnosed with human immunodeficiency virus (HIV) in 2002. (Tr. at 539.)  She currently takes three medications, Truvada, Norvir, and Reyataz, as her anti-retroviral therapy (ARV).  (Tr. at 540.)

In December 2009, Plaintiff's primary care physician, Patricia Brown, M.D., noted that her HIV was clinically stable on her current ARV.  (Tr. at 511.)  HIV laboratory testing revealed no viral load and normal CD4 levels in July 2010, January 2011, July 2011 and December 2011.  (Tr. at 512-514, 584-598.)

In April 2010, Plaintiff complained of "occasional" constipation, and a two-month history of polydispia (excessive thirst) and polyuria (excessive urination).  (Tr. at 507.)  Dr. Brown notes in April 2012 that Plaintiff complained of fatigue and diarrhea.  (Tr. at 604.)  After examining Plaintiff in January 2012, Cynthia Shelby-Lane M.D. notes that Plaintiff complained of experiencing diarrhea three times a week as a result of her HIV medication. (Tr. at 540.)

Dr. Shelby-Lane completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) on Plaintiff, finding that Plaintiff was able to lift or carry up to fifty pounds occasionally and twenty pounds frequently. (Tr. at 547.)  She opined that

Plaintiff could sit, stand and/or walk for up to two hours at a time without interruption, could sit up to eight hours in an eight-hour workday and stand and/or walk up to six hours in an eight-hour workday. (Tr. at 548.)  Dr. Shelby-Lane also determined that Plaintiff was capable of frequently using her hands and feet for work-related activities and occasionally climbing stairs or ramps, balancing, stooping, kneeling, crouching or crawling. (Tr. at 549-550.) She limited Plaintiff to only occasional operation of a motor vehicle and work around moving mechanical parts, humidity, wetness, dust, odor, fumes or other respiratory irritants, extreme heat or cold and vibrations. (Tr. at 551.) She also opined that Plaintiff should never work around unprotected heights or climb ladders, scaffolds or ropes. (Tr. at 550-51.)

Plaintiff was diagnosed with depression in 1998, and with bipolar disorder in 2009. (Tr. at 413.) A medication review note from nurse practitioner, Angela DiSante in April 2009 indicates that Plaintiff was "doing well, motivated." (Tr. at 468.) In May 2009, Plaintiff reported not feeling depressed. (Tr. at 472.) In June 2009, she reported feeling much less depressed since starting Prozac. (Tr. at 476.)

In July 2009, Ms. DiSante reports that Plaintiff showed a "decline in mood and functioning," noting that Plaintiff had just broken up with her boyfriend. (Tr. at 480.) In August 2009, Ms. DiSante noted Plaintiff was very depressed, but had started classes at Wayne County Community College. (Tr. at 484.) Ms. DiSante switched Plaitniff from Prozac to Effexor and from restoril to elevil in September 2009, after Plaintiff admitted that she had stopped taking her medication. (Tr. at 487-488.)

On June 12, 2010, Plaintiff was admitted to St. John's Hospital following a reported overdose and suicide attempt. (Tr. at 435-438.) She was discharged two days later with the instruction to follow up with Ms. DiSante. (*Id*.) Plaintiff saw Ms. DiSante on July 2, 1010, and reported that she had stopped taking the Effexor and had dropped out of school. (Tr. at 505.) After resuming the medication, she reported feeling much less depressed. (Tr. at 500.) In August, she reported feeling depressed but noted improvement in her mood. (Tr. at 496.)

In September 2010, Ms. DiSante increased Plaintiff's Effexor after Plaintiff reported feeling very depressed. (Tr. at 536.) Plaintiff reported feeling much less depressed and was noted as stable and doing well at a follow-up visit after the increase in her Effexor dosage. (Tr. at 533.) In November 2010, DiSante noted Plaintiff's mood as normal and stable. (Tr. at 527.) DiSante reported that Plaintiff was doing well and doing volunteer work. (*Id*.) In December 2010, Plaintiff reported feeling very depressed, but continued to do volunteer work. (Tr. at 523.)

Later in December, Plaintiff reported to DiSante that she had been feeling better the last two weeks, admitting that she was now, finally taking the full prescribed amount of Effexor. (Tr. at 519.) Ms. DiSante noted that Plaintiff's improved mood was normal. (*Id.*) In January 2011, Plaintiff ceased taking two of her medications, and became very depressed. (Tr. at 516.)

In August 2011, social worker Erika Morris evaluated Plaintiff on an Intake Assessment. (Tr. at 565-568.) Plaintiff's mood was noted as normal and Plaintiff reported

improvement in her daily functions, more interaction with her family and that she was in school, studying.  (Tr. at 565, 567.)

At her medication review with her treating psychiatrist Manuel Tancer, M.D. in December 2011, Plaintiff reported she had been off of her medication for two months, but was taking some unknown pills from a friend to sleep.  (Tr. at 563.)  Her mood was not depressed but she reported visual hallucinations, and Dr. Tancer described her thought content as bizarre and assessed her as psychotic.  (*Id.*)  He prescribed olanzapine.  (*Id.*)

In January 2012, Dr. Tancer noted that Plaintiff was still inconsistent with her medication. (Tr. at 560.)  He assessed her as psychotic, noted she continued to experience visual hallucinations and was not bothered by depression.  (*Id.*)  Dr. Tancer added chlomipramine and fluoxetine to her medication. (Tr. at 561.)  At her next follow-up visit with Dr. Tancer, Plaintiff reported feeling very depressed, but experienced fewer hallucinations.  (Tr. at 557.)  Dr. Tancer increased her fluoxetine. (Tr. at 558.)

Ms. DiSante completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) on June 30, 2010.  (Tr. at 490-492).  She opined that Plaintiff had marked limitations in her ability to understand, remember and carry out complex instructions, make judgments on complex work-related decisions and interact appropriately with the public or supervisors. (Tr. at 490-491.)  Ms. DiSante also noted Plaintiff had moderate limitations in her ability to carry out simple instructions, make judgments on simple work-related decisions, interact appropriately with co-workers and respond to usual work situations and changes in

a routine work setting. (*Id*.)  She opined that Plaintiff had only a mild limitation in her ability to understand and remember simple instructions.  (Tr. at 490.)

In September 2009, Plaintiff was evaluated by Terrance Mills. Ph.D., L.P.  Dr. Mills diagnosed Plaintiff with major depression, and opined that she was moderately impaired in her ability to interact with supervisors, co-worker and the public, but mildly impaired in her ability to understand, remember and follow simple instructions.  (Tr. at 413-415.)

In December 2009, a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment were completed by James Tripp, Ed.D.  (Tr. at 417-433.)  Dr. Tripp opined that Plaintiff was moderately limited in her ability to understand, remember and follow detailed instructions and to respond appropriately to changes in the work setting.  (Tr. at 417-418.)  He also noted that Plaintiff was mildly limited in her ability to perform activities of daily living and in her ability to maintain social functioning and moderately limited in her ability to maintain concentration, persistence and pace.  (Tr. at 431.)  He found Plaintiff was "able to do simple, sustained, unskilled tasks with persistence." (Tr. at 419.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

is limited to lifting and carrying 50 pounds occasionally and 20 pounds frequently.  Could stand, walk or sit one hour at a time without interruption.  And could stand, sit or walk a total of six hours each. [She] could frequently reach overhead, perform all reaching, handling, fingering, feeling, pushing and pulling. [She] could frequently operate foot controls, could only occasionally climb stairs and ramps, could never climb ladders or scaffolds, could occasionally balance, stoop, kneel, crouch or crawl.  The individual could not work around unprotected heights and could only occasionally be exposed to moving, mechanical parts, operating motor vehicles, humidity and wetness, dust, odors, fumes and pulmonary irritants,

13

extremes in temperature and vibrations.  In addition, the individual would be limited to simple, routine, one to three step tasks in a low stress environment defined as no quick decision making and no quick judgment on the job.  There could be no interaction with the public and all work must be performed in a non production paced setting.

(Tr. at 58-59.)   The VE testified that such a person could not perform Plaintiff's past relevant work but could perform the jobs at the medium or light exertional level of housekeeper (4,000 jobs regionally), night cleaner (4,000 jobs regionally), and paper sorter (1,000 jobs regionally). (Tr. at 59-60.)  At the sedentary level, the VE testified that Plaintiff could perform as an inspector (2,500 jobs regionally), office clerk (1,900 jobs regionally), and sorter (3,000 jobs regionally).  (Tr. at 60-61.)

The ALJ then asked the VE to consider the same hypothetical individual who, "would be interrupted occasionally, meaning up to one third of the work day by a lack of concentration and the need to be redirected." (Tr. at 61.)  The VE responded that such a limitation would be work preclusive.  (*Id*.)   In response to the ALJ's queries, the VE also testified that the need to take three to five unscheduled breaks would be work preclusive , as would the need to be absent from the workplace two to three times a month. (Tr. at 61-62.)

**F.    Analysis**

**1.    Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 10.)  As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter

14

differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ's determination is not supported by substantial evidence because it rejected at least some of Plaintiff's treating therapist, nurse practitioner, Angela DiSante's opinions and the opinions of Plaintiff's treating psychiatrist, Dr. Tancer.

**a.     Medical Source Evidence**

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

> An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source").

*Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013)(internal citations omitted).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or

15

evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Acceptable medical sources," who can be considered treating sources, do not include nurse practitioners. 20 C.F.R. §404.1513(a).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart,* 710 F.3d at 376 (citations omitted).

> This requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ] he is not. Significantly, the requirement safeguards a reviewing court's time, as it "permits meaningful" and efficient "review of the ALJ's application of the [treating physician] rule."

 *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011) (citations omitted).   "This circuit 'has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion.'" *Gayheart,* 710 F.3d at 380 (quoting *Cole*, 661 F. 3d at 939).

16

Even if an ALJ determines that plaintiff's treating physician's opinions should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *13 (E.D. Mich. Sept. 13, 2013)(citing *Blakley v.Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009)).

Because the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a dissension's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

Additionally, the Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have

17

no 'direct correlation to the severity requirements of the mental disorders listings.'" *Kennedy v. Astrue*, 247 F.App'x 761, 766 (6th Cir. 2007)(citations omitted).  Accordingly, any decision to disregard the GAF score is of little consequence and would not undermine a decision supported by substantial evidence.  *See Oliver v. Comm'r of Soc. Sec.*, 2011 WL 924688, at *4 (6th Cir. Mar. 17, 2011)(upholding ALJ's decision not to rely on GAF score of 48 because it was inconsistent with other substantial evidence in the record and noting that "GAF score is not particularly helpful by itself").

Here, despite Plaintiff's disagreement with the outcome, I suggest that the ALJ properly applied the regulatory standards for evaluating medical source evidence.  First, Plaintiff argues that the ALJ improperly rejected Plaintiff's treating psychiatrist, Dr. Tancer's opinions by affording them only "some weight."  Dr. Tancer, rendered medical opinions, or statements that reflect judgments about the nature and severity of Plaintiff's impairments, only in the form of assessed GAF scores.  (Tr. at 558-564.)  The ALJ dismissed Dr. Tancer's relatively low GAF assessments because they were not supported by his findings from mental status examinations he performed on Plaintiff and because they were inconsistent with the assessments provided by Plaintiff's long-time therapist, Ms. DiSante. (Tr. at 137.)   Because GAF scores are of "little consequence" and "not particularly helpful by [themselves]," and because they were not supported by and inconsistent with other medical evidence of record, the ALJ's decision to assign only some weight to Dr. Tancer's opinions was appropriate and supported by substantial evidence.  *See Kennedy*, 247 F.App'x at 766; *see Oliver*, 2011 WL

18

924688, at *4; *see also Turcus v. Soc. Sec. Admin.*, 110 F.App'x 630, 632 (6th Cir. 2004)(upholding ALJ's decision that plaintiff could do simple, routine work despite GAF score of 35). Moreover, the ALJ articulated the necessary "good reasons" for affording Dr. Tancer's opinions less than controlling weight by citing their inconsistency with his mental status examinations and the assessments made by Plaintiff's long-term therapist. (Tr. at 137.)

Plaintiff also argues that the ALJ erred in assigning only some weight to nurse practitioner Angela DiSante's Medical Source Statement. As correctly noted by the Commissioner in its brief support its Motions for Summary Judgment (Doc. 11.), nurse practitioners, such as Ms. DiSante, are not acceptable medical sources and thus cannot be considered treating sources under the regulations. 20 C.F.R. §404.1513(a). Although her opinion may be considered in determining the severity of Plaintiff's impairment and how it affects her ability to work, it is not entitled to the deference afforded to treating source opinions. 20 C.F.R. §404.1513(d); *see Smith-Johnson v. Comm'r of Soc. Sec.*, ___Fed.Appx.___ (6th Cir. 2014); 2014 WL 4400999, at *8 (6th Cir., Sept. 8, 2014). The ALJ did not err in discounting Ms. DiSante's opinions in the Medical Source Statement because those opinions were not consistent with her treatment notes, which reflected mostly normal mental status examinations and consistent functioning at a fairly normal level (including taking college courses and engaging in volunteer work) over an extended period of treatment. (Tr. at 466-537.)

In sum, I suggest that the ALJ articulated good reason for declining to give Dr.

Tancer's opinions (in the form of GAF scores) controlling weight, and cited appropriate justification for giving those opinions, and those of nurse practitioner DiSante, only "some" weight in her determination of Plaintiff's disability claim.   Moreover, the significant weight the ALJ assigned to evaluating examiner Dr. Mills was appropriate given that his diagnosis and opinions regarding Plaintiff's limitations and abilities to do work-related activity were internally consistent with his own objective findings from the mental status examination, and externally consistent with the other objective and medical opinion evidence of record (i.e., the treatment notes and findings of the mental status examinations performed by nurse practitioner DiSante and Dr. Tancer).   The significant weight assigned to Dr. Tripp's evaluative opinion was similarly appropriate because, as the ALJ noted, Dr. Tripp's opinion was derived from a full of review of Plaintiff's medical record and was consistent with the objective findings of Plaintiff's treaters and evaluating examiner, Dr. Mills. (Tr. at 136.) Substantial evidence supports the ALJ's evaluation of medical source evidence.

**b.    RFC**

Plaintiff argues that the ALJ's determination of non-disability is not supported by substantial evidence because the developed RFC does not accurately portray Plaintiff's physical and mental impairments and nonexertional limitations. (Doc. 10.)   Specifically, Plaintiff argues that the ALJ's RFC omits acknowledgment of or accommodation for the side effects Plaintiff suffers from her HIV medications, and does not address her moderate limitations in concentration, persistence and pace.   Although Plaintiff is correct in her

20

argument that an RFC must accurately portray a plaintiff's physical and mental impairments, *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010), the ALJ has specifically and adequately addressed both the medication side effects and moderate limitations in concentration, persistence and pace in Plaintiff's RFC.

### i. Side Effects

Despite Plaintiff's argument that the ALJ ignored the side effects Plaintiff suffers from her HIV medications, the ALJ specifically addresses these side effects in explaining the derivation of the RFC:

> The limitation to light exertional activity with only occasional postural maneuvering, only frequent use of the arms and feet, limited exposures to hazards, humidity, vibrations and respiratory irritants takes into account the claimant's obesity, **fatigue associated with HIV, complaints of pain and need to avoid certain environments due to HIV**. Likewise, the limitation to simple work in a "low stress," non-production pace environment with no public interaction takes into account..**her complaints of fatigue associated with HIV**.

(Tr. at 138.)(emphasis added) Notably, the ALJ included these limitations based upon the opinions of examining physician Dr. Shelby-Lane, notwithstanding the ALJ's findings that the record includes only minimal evidence of the alleged severe side effects from Plaintiff's prescribed medications, with no treatment sought or rendered to address those side effects. (Tr. at 133, 507, 540, 548-551, 604.)  Plaintiff does not argue why these restrictions, which were accepted and adopted by the ALJ from an examining physician's medical opinion and specifically designed to address the side effects of her HIV medications, are inadequate or what further restrictions would be necessary to accommodate them.

21

### ii.     Concentration, Persistence and Pace

Plaintiff also argues that ALJ's determination is not supported by substantial evidence because the RFC did not contain specific limitations regarding Plaintiff's moderate concentration, persistence and pace impairment.  Plaintiff applies the common argument that the RFC limitation, such as the one the ALJ used here, for "simple, routine, one to three-step tasks...performed in a non-production pace setting" fails to account for moderate concentrational and pace deficiencies.  As noted by another court in this District,

> [t]here are cases ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical to unskilled work or simple, routine tasks–but also other cases that have found that an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.

*Roberts v. Comm'r of Soc. Sec.*, 2011 WL 4407221 at *8 (E.D. Mich., Aug. 8, 2011)(internal citations omitted).

Although the *Roberts* court acknowledged "that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence and pace...," it determined that "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of simple, routine...work, but excludes a moderate limitation in concentration."  *Id.*  Indeed, the Sixth Circuit has rejected "the notion that a hypothetical must contain talismanic language," instead determining that a hypothetical question is sufficient if it encompasses Plaintiff's relevant limitations.  *Street v. Comm'r of Soc. Sec.*, 390 F.Supp.2d 630, 638 (E.D. Mich 2005)(citing

22

*Smith v. Halter*, 307 F.3d 377, 379 (6th Cir 2001)).  Accordingly, a court "**must look at the record as a whole and determine if substantial evidence supports the ALJ's decision.**" *Roberts,* 2011 WL 4407221 at *8(emphasis added)(citing *Davis v. Apfel*, 133 F.Supp.2d 542, 547 (E.D. Mich 2001), *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008), *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010); *Marini v. Comm'r of Soc. Sec.*, 2014 WL 1230034, at *5 (E.D. Mich. March 25, 2014).

The finding of a moderate limitation in concentration, persistence, or pace must be considered in conjunction with the medical experts' conclusions, and other evidence, that suggests Plaintiff could successfully perform occupational tasks.   *Roberts*, 2011 WL 4407221 at *8.  In this case, all of the medical opinion evidence supports the ALJ's hypothetical limitation for "simple, routine, one to three-step tasks" performed in a non-production pace setting.  First, Dr. Mills opined that, although Plaintiff was moderately limited in her ability to understand, remember and follow detailed instructions, she was not significantly limited in her ability to understand, remember and follow simple instructions. (Tr. at 417.)  After reviewing Plaintiff's medical records, including the notes of nurse practitioner DiSante and the Mental Residual Functional Capacity Assessment completed by Dr. Mills, Dr. Tripp also concluded that Plaintiff could do "simple, sustained, unskilled tasks with persistence." (Tr. at 419.)  Even nurse practitioner DiSante noted only mild limitation in Plaintiff's ability to understand and remember simple instructions.  (Tr. at 490.)

23

In addition, Plaintiff's described daily activities demonstrate sufficient concentration to complete simple one or three-stepped tasks. Nurse practitioner DiSante noted that Plaintiff was enrolled in and enjoying courses, including an algebra and an English class, at Wayne County Community College. (Tr. at 484.) Plaintiff's psychiatric records also reference volunteer work she was doing. (Tr. at 523, 527.) Social Worker Erika Morris notes on Plaintiff's Intake Assessment in August 2011 that Plaintiff demonstrates a passion for learning and enjoys writing as a form of expression. (Tr. at 567.)

That Plaintiff could concentrate sufficiently to attend classes, complete course work, write and do volunteer work is further evidence that the restrictions set forth in the ALJ's RFC fully encompassed Plaintiff's concentrational limitations. *See e.g., Marini,* 2014 WL 1230034 at *18(ALJ determined that RFC limiting Plaintiff to simple, routine, repetitive tasks was adequate where Plaintiff regularly engaged in activities that require a "fair degree of concentration, persistence and pace," such as using a computer); *see also LaTarte v. Comm'r of Soc. Sec.*, 2009 WL 1044836 at *3 (E.D. Mich. April 20, 2009).

Finally, Plaintiff has not explained why more detailed or specific limitations were required in order to account for her deficiencies in concentration, persistence and pace, nor has she suggested what those additional limitations should be. Without any explanation as to why the ALJ's restriction for "simple, routine, one or three-stepped tasks...in a non-production pace setting" does not account for Plaintiff's concentration, persistence or pace impairment, I must conclude that the restriction for simple, routine one or three-step tasks

24

in a non-production pace setting contained within the ALJ's hypothetical adequately addresses Plaintiff's concentrational and/or pace deficiencies. *See Marini*, 2014 WL 1230034 at \*18; *see also, Lewicki*, 2010 WL 3905375, at \*3.

Given the agreement among the medical experts as to Plaintiff's ability to perform one or three-step tasks, the concentration and persistence exhibited by Plaintiff in taking college courses and performing volunteer work and the absence of any explanation as to why more detailed or specific limitations are necessary to account for Plaintiff's impairments, I agree with the ALJ that "based on the evidence...there is no significant credible evidence to warrant restrictions beyond the range of limited light exertional work in the [RFC] determination." (Tr. at 138.) Accordingly, I suggest that the ALJ's RFC and her determination that Plaintiff is not disabled are supported by substantial evidence.

### 2. Appeals Council Directives

Plaintiff repeatedly argues that the ALJ failed to address and comply with the Appeals Council's directives for Plaintiff's case on remand. Upon careful review of the Order of Appeals Council, and the ALJ's Decision upon Remand from Appeals Council, I suggest that these arguments lack merit. (Tr. at 118-119, 124-140.)

First, as directed by the Appeals Council, the ALJ obtained additional evidence regarding Plaintiff's HIV, in the form of additional records from Plaintiff's treating physician, Dr. Brown, and an evaluative examination and report from Dr. Shelby-Lane. (Tr. at 118-119, 582-604, 539-552.) The ALJ also further evaluated Plaintiff's subjective

complaints, specifically those of fatigue and other side effects from her prescribed medications according to the relevant regulations and addressed them specifically in her RFC and decision, as discussed more fully above.  (Tr. at 138.)

The ALJ also further considered and substantially modified Plaintiff's RFC, specifically incorporating the evaluation and opinion of the nontreating source, as instructed by the Appeals Council.  (Tr. at 119, 131, 106.)  As discussed more fully above, the ALJ developed Plaintiff's revised RFC from the limitations and opinions set forth in Dr. Shelby-Lane's January 2012 Medical Source Statement.  (Tr. at 131-138, 539-552.)  In so doing, the ALJ specifically linked assessed limitations from the RFC to Plaintiff's various impairments and complaints. (Tr. at 138.)  For example, the ALJ explains in her decision that she limited Plaintiff to "simple work in a 'low stress,' non-production pace environment with no public interaction" to account for Plaintiff's depression and bipolar disorder along with the fatigue experienced as a result of her HIV.  (*Id*.)

Finally, again per the instruction of the Appeals Council, the ALJ obtained evidence from a VE to determine the effect of the assessed limitations on Plaintiff's occupational base.  (Tr. at 119.)  The ALJ's hypothetical questions reflected the specific limitations (as set forth in the RFC) derived from the record as a whole (Dr. Shelby-Lane's Medical Source Statement, Dr. Mill's and Dr. Tripp's MRFC, Plaintiff's complaints and medical records of side effects from prescribed medication, and objective findings from mental status examinations and treatment notes from Plaintiff's psychiatric treaters.) (Tr. at 58-62.)

Because the ALJ adequately addressed the Appeals Council's directives upon remand, I find further remand is not necessary.

**G.    Conclusion**

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

**III.   REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate

27

in detail with the objections, and shall address specifically, and in the same order raised, each

issue contained within the objections.


                                                   s/ Charles E Binder
                                                   _____
                                                   CHARLES E. BINDER
Dated: October 28, 2014                            United States Magistrate Judge

28